An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| KINDER MORGAN ENERGY PARTNERS, L.P., Appellant/Cross-Respondent, vs. SHARON CLAYTOR, PERSONAL REPRESENTATIVE OF THE ESTATE OF RICK D. LEWIS; AND HILARIE LEWIS, HEIR OF RICK D. LEWIS, Respondents/Cross-Appellants. | No. 60131 |

**FILED**

**DEC 1 6 2014**

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

| | |
|---|---|
| KINDER MORGAN ENERGY PARTNERS, LP, Appellant, vs. SHARON CLAYTOR, PERSONAL REPRESENTATIVE OF THE ESTATE OF RICK D. LEWIS; AND HILARIE LEWIS, HEIR OF RICK D. LEWIS, Respondents. | No. 60667 |

## ORDER OF AFFIRMANCE

This is a consolidated appeal and cross-appeal from a district court judgment on a jury verdict and from post-judgment orders denying a new trial and awarding costs in a torts action. Eighth Judicial District Court, Clark County; Nancy L. Allf, Judge.

Appellant Kinder Morgan Energy Partners, LP is an energy pipeline company that transports gasoline for oil companies. Rick Lewis worked as a gasoline tanker truck driver, picking up gasoline at Kinder's Las Vegas terminal. Lewis developed myelodysplastic syndrome (MDS), a form of pre-leukemia that can be caused by exposure to benzene, a

14-40970

carcinogen that naturally occurs in gasoline. Lewis sued Kinder under strict liability and negligence theories. Lewis subsequently died from complications of his disease, and his estate representative and daughter substituted in as plaintiffs. Before trial, the district court denied Kinder's motion to exclude plaintiffs' experts, but granted Kinder's motion for summary judgment on plaintiffs' request for punitive damages. The jury found Kinder liable under both strict liability and negligence, and the district court denied Kinder's renewed motion for judgment as a matter of law and motion for new trial.

We begin with Kinder's assertion that the district court erred in admitting plaintiffs' causation expert witness testimony because the opinions were unreliable, a decision we review for an abuse of discretion. *Hallmark v. Eldridge*, 124 Nev. 492, 498, 500-01, 189 P.3d 646, 650-52 (2008); NRS 50.275. Plaintiffs' three experts opined as to both general causation, whether the substance at issue had the capacity to cause the harm suffered by the injured person, and specific causation, whether the injured person more likely than not suffered from the harm as a result of exposure to the substance. *See Holcomb v. Ga. Pac., LLC*, 128 Nev. ___, ___ n.5, 289 P.3d 188, 192 n.5 (2012). Important here, like in many other toxic tort cases, is whether the experts presented a sufficiently reliable estimate of Lewis's dose or some other measure of exposure, upon which both specific and general causation may be reliably opined. *See* David L. Faigman, et. al, *Modern Scientific Evidence: The Law and Science of Expert Testimony* § 29:7 Causation—General Causation—Dosage (2014-15 ed.).

Here, Stephen Petty, plaintiffs' industrial hygienist expert, estimated Lewis's exposure range. First, he estimated the level of benzene

in the gasoline that ran through the terminal to be between .5 percent and 5 percent by considering historical literature reflecting gasoline benzene content in various places. Based on that range, Petty extrapolated Lewis's exposure upon each loading to be between .1 to 1.4 parts per million. Finally, he estimated approximately how many times Lewis loaded his truck. Given that the precise amount of benzene in the gasoline that ran through the terminal was unknown, that no atmospheric testing was conducted at the terminal while Lewis worked there, and that Lewis was deceased and therefore could not assist in recreating his experience, Petty's estimated exposure range was based on what other, secondary evidence was available. Such expert estimates are sometimes necessary, and can properly support an opinion as to specific causation. *See Parker v. Mobil Oil Corp.*, 857 N.E.2d 1114, 1120-21 (N.Y. 2006) ("[E]xposure can be estimated through the use of mathematical modeling by taking a plaintiff's work history into account to estimate the exposure to a toxin."). But given the tenuous nature of the underlying literature and the imprecise recreation of Lewis's actions and therefore his exposure here, Petty's exposure estimation may not have been sufficient in and of itself to support the other experts' opinions that it was more likely than not that Lewis's exposure to benzene present in the gasoline that ran through the terminal caused his MDS.

A distinctive aspect of this case, however, is that Lewis experienced alterations to chromosomes 5 and 7. Toxicologist Martyn Smith testified that such alterations indicate benzene exposure. Smith further opined that these chromosomal alterations may occur with even a very low level of benzene exposure, and would rarely develop in a 56 year old who was not similarly exposed. This chromosomal evidence combined

with Petty's estimated exposure range provided a sufficiently reliable basis for the experts' conclusions that it was more probable than not that Lewis's MDS was caused by his benzene exposure, and distinguish this appeal from the case upon which Kinder relies, *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1149-50, 1177 (2009) (noting that in addition to there being "no actual exposure measurements," there was no evidence that the plaintiff had suffered chromosomal abnormality, though AML, the plaintiff's disease, caused by exposure to toxic substances had been shown to result in a higher level of chromosomal aberrations than AML caused by something else).

As to the general causation testimony, Smith and Peter Infante, plaintiffs' epidemiologist expert, relied upon epidemiological and other studies to support their opinions that Lewis's exposure level was capable of causing his disease. Though Kinder points to many decisions wherein other courts have excluded similar general causation testimony as unreliable, those courts excluded the evidence under the more exacting Federal Rule of Evidence 702, as interpreted in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, (1993). *See, e.g., Henricksen*, 605 F. Supp. 2d at 1168-77. Governing our analysis here, however, is this state's less rigid expert rule as outlined in NRS 50.275. *See Higgs v. State*, 126 Nev. 1, 16-18, 222 P.3d 648, 657-59 (2010). And under that governing standard, the studies upon which plaintiffs' expert's relied sufficiently supported their general causation conclusions to render those opinions reliable enough for admittance.

As a final procedural note on this issue, the district court's summary denial of Kinder's motion in limine and leaving the complex reliability issues for resolution during trial is not the ideal exercise of a

district court's gatekeeping role for expert testimony. However, given that what each expert was to testify regarding, and the basis for such testimony, was presented pre-trial in the expert reports, and that the experts were able to more clearly articulate the basis for their opinions during trial while facing no objection from Kinder, and given the chromosomal damage, we defer to the district court's discretionary decision to admit plaintiffs' expert testimony.

We next review the district court's denial of Kinder's renewed motion for judgment as a matter of law as to plaintiffs' negligence claim. We review this decision de novo and will uphold the jury's verdict if supported by substantial evidence, as determined by viewing the evidence in the light most favorable to the plaintiff. *Allstate Ins. Co. v. Miller*, 125 Nev. 300, 308, 212 P.3d 318, 324 (2009); *Winchell v. Schiff*, 124 Nev. 938, 947, 193 P.3d 946, 952 (2008). Kinder challenges whether the evidence was sufficient to show general and specific causation, *Holcomb*, 128 Nev. at ___ n.5, 289 P.3d at 192 n.5, and to support that Lewis's injury resulting from his exposure was foreseeable enough to establish proximate cause and that Kinder breached its duty of reasonable care by failing to warn. *Yamaha Motor Co., U.S.A. v. Arnoult*, 114 Nev. 233, 238, 955 P.2d 661, 664 (1998); *Foster v. Costco Wholesale Corp.*, 128 Nev. ___, ___, 291 P.3d 150, 152, 156 (2012) ("[A] landowner owes a duty of reasonable care to entrants for risks that exist on the landowner's property."). Considering plaintiffs' expert testimony in the light most favorable to plaintiffs, including the testimony recounted previously, sufficient evidence supports the jury's determinations on general and specific causation. Furthermore, though Kinder presented evidence that regulating agencies and other scientific bodies did not label gasoline a carcinogen and did not universally

agree that gasoline exposure was capable of causing leukemia, taking the remaining evidence in plaintiffs' favor, such as plaintiffs' expert testimony that there was a consensus that the benzene in gasoline is carcinogenic and that low levels of sustained benzene exposure can cause leukemia, substantial evidence supports the jury's findings that Lewis's injuries were foreseeable enough to demonstrate breach and proximate cause. The district court thus did not error in denying Kinder's renewed motion for judgment as a matter of law.[1]

Kinder also challenges the district court's order denying its motion for a new trial under NRCP 59(a) based on plaintiffs' counsel's alleged trial misconduct that Kinder submits caused the jury to award excessive damages. Whether misconduct occurred is a question of law we review de novo, but the decision to deny a motion for a new trial rests within the district court's sound discretion. *Bayerische Motoren Werke Aktiengesellschaft v. Roth*, 127 Nev. ___, ___, 252 P.3d 649, 656 (2011); *Nelson v. Heer*, 123 Nev. 217, 223, 163 P.3d 420, 424-25 (2007). Turning first to the objected-to conduct, which Kinder bore the burden of demonstrating to the district court was so extreme that objection,

---

[1]As explained herein, we also affirm the district court's decision precluding punitive damages. Therefore, because plaintiffs' recovery under their negligence liability theory and alternative strict liability theory was the same, we need not reach Kinder's challenge as to the portion of the jury's verdict finding it strictly liable, nor the concerns raised by amici Nevada Justice Association. *See Countrywide Home Loans, Inc. v. Thitchener*, 124 Nev. 725, 733, 192 P.3d 243, 248 (2008) ("While plaintiffs are permitted to plead alternative or different theories of relief based on the same facts, plaintiffs may not recover more than their 'total loss plus any punitive damages assessed.'").

admonishment, and curative instruction could not remove its effect, *Bayerische*, 127 Nev. at ___, 252 P.3d at 656, Kinder argues that counsel's statements in opening that Lewis's treating physician would testify as to causation, and that physician's testimony that indeed touched upon causation, violated the district court's order precluding that physician from testifying on causation such as to require a new trial. However, after the opening comment, the district court admonished plaintiffs' counsel in front of the jury and instructed the jury to disregard the statement, and instructed the jury at the end of the trial that in weighing the treating physician's testimony the jury should disregard that physician's causation conclusions, thus curing any prejudicial effect these errant causation comments may have had. *Krause Inc. v. Little*, 117 Nev. 929, 937, 34 P.3d 566, 571 (2001).

As to the unobjected-to conduct, which may be reviewed only for plain error, *Lioce v. Cohen*, 124 Nev. 1, 19, 174 P.3d 970, 981-82 (2008), Kinder asserts that plaintiffs' counsel's comments during opening and closing that called for jury nullification and misrepresented that Lewis's treating physician was the only unpaid expert in the case plainly warrant a new trial. Some of counsel's comments were misconduct, for example counsel's comment in opening as to Kinder's size and wealth, *see City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756-57 (6th Cir. 1980), as well as the misrepresentation that Lewis's treating physician was not paid for his time, of which Kinder was aware given the physician's deposition testimony. But Kinder has not shown that these brief statements made during the 11-day trial amounted to such irreparable and fundamental error that but for the misconduct the verdict would have

been different, especially in light of the evidence supporting plaintiffs' negligence claim. *Bayerische*, 127 Nev. at ___, 252 P.3d at 657.

Finally, the damages awarded by the jury, though above plaintiffs' estimates of medical and funeral expenses and lost earning capacity, are supported by substantial evidence, as the district court's factual findings demonstrate, and do not depart so greatly from the estimated damages so as to indicate that the damages award may be explained only by plaintiffs' counsels' misconduct. *Compare DeJesus v. Flick*, 116 Nev. 812, 820 & n.5, 7 P.3d 459, 464-65 & n.5 (2000), *overruled on other grounds by Lioce v. Cohen*, 124 Nev. 1, 174 P.3d 970 (2008). Therefore, Kinder has not shown that the district court abused its discretion in denying the motion for new trial.

We next address plaintiffs' cross appeal, in which they argue that the district court erred in granting summary judgment on their punitive damages claim, a decision we review de novo and "through the prism of the substantive evidentiary burden," which here is clear and convincing evidence. NRS 42.005(1); *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 254 (1986); *Wood v. Safeway, Inc.*, 121 Nev. 724, 731, 121 P.3d 1026, 1031 (2005) (adopting evidentiary standard set forth in *Anderson v. Liberty Lobby*, 477 U.S. 242). Plaintiffs sought to recover punitive damages on the theory that Kinder acted with malice, express or implied; that is, that Kinder engaged in despicable conduct "with a conscious disregard of the rights or safety of others." NRS 42.001(3); NRS 42.005(1). A defendant acts with conscious disregard when it knows of the probable harmful consequences of a wrongful act and willfully and deliberately fails to act to avoid those consequences. NRS 42.001(1).

Plaintiffs failed to raise an issue of fact that Kinder knew Lewis's exposure to gasoline posed a probable risk of cancer and then willfully and deliberately failed to take precautionary measures. Plaintiffs presented evidence that Kinder's executives knew that ben zene was a dangerous carcinogen but that Kinder did not monitor the atmospheric benzene content at the Las Vegas terminal or estimate the daily cumulative benzene exposure for a truck driver at the terminal. Plaintiffs also presented evidence that Kinder had a Benzene Management Plan for handling raw benzene at some of its other terminals but not at the Las Vegas facility. Given the heightened burden of proof, this evidence is insufficient to demonstrate a triable issue of fact that Kinder knew exposure to the gasoline in its terminal, as opposed to raw benzene, posed a probable risk of cancer and that it willfully and deliberately disregarded that risk such as to submit the punitive damages issue to the jury. Though plaintiffs' evidence may have supported the negligence verdict, they failed to show an issue of fact that Kinder's actions could support an award of punitive damages. *See Wyeth v. Rowatt*, 126 Nev. \_\_\_, \_\_\_, 244 P.3d 765, 783 (2010) (to support punitive damages the defendant's conduct must exceed even "recklessness or gross negligence").

Finally, as Kinder did not address its consolidated appeal of the district court's order awarding plaintiffs costs, we find no error as to that decision. NRAP 28 (a)(9); *Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant

(O) 1947A

authority and cogent argument; issues not so presented need not be addressed by this court."). Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Gibbons

_____, J.          _____, J.
Pickering                            Hardesty

_____, J.          _____, J.
Parraguirre                          Douglas

_____, J.          _____, J.
Cherry                               Saitta

cc:     Hon. Nancy L. Allf, District Judge
        Ara H. Shirinian, Settlement Judge
        Fulbright & Jaworski, LLP/Houston
        Lewis Roca Rothgerber LLP/Las Vegas
        Holland & Hart LLP/Las Vegas
        Cliff W. Marcek
        Hutchison & Steffen, LLC
        Schrader & Associates LLP
        Thomas & Springberg, P.C.
        Eighth District Court Clerk